2021 IL App (1st) 190006-U

No. 1-19-0006

Order filed November 15, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 60045 |
| | ) | |
| PHALYON McFARTHING, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because the jury found the defendant guilty of second degree murder, not first degree murder, where the evidence overwhelmingly showed that the defendant continued beating the victim after the victim could no longer fight back, the trial court did not commit plain error by excluding evidence of the victim's prior act of violence.  Defendant's sentence is not excessive where no evidence shows the trial court failed to adequately consider the mitigating evidence or his rehabilitative potential.

¶ 2        A jury found Phalyon McFarthing guilty of second degree murder for killing Al Ferguson. The trial court sentenced McFarthing to 16 years in prison.  McFarthing argues on appeal that the court should have permitted him to introduce evidence of one of Ferguson's prior violent acts, and the court imposed an excessive sentence.  We find no plain error in the decision to disallow evidence of the prior violent act, and we find no abuse of sentencing discretion. Accordingly, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        Shortly after midnight on January 24, 2016, police officers, responding to a call, found Ferguson and McFarthing in a propped open elevator of an apartment building in Chicago. Ferguson's pants and underwear were around his knees, and there was blood and "what appeared to be a large fleshy bloody piece of muscle" in the elevator. Ventrella unsuccessfully attempted to rouse Ferguson, who had significant injuries to his face and left eye, was bleeding from his mouth and ears, and had other abrasions and injuries. Ferguson died four days later from injuries he sustained in the elevator.

¶ 5        Police took McFarthing to a hospital, where he spoke with doctors and police.  Police made a video recording of an interview of McFarthing at the police station on January 24, 2016. Prosecutors charged McFarthing with attempted robbery, aggravated criminal sexual assault, and first degree murder.

¶ 6        McFarthing informed prosecutors that he intended to present evidence that he acted in self-defense, and he filed a pretrial motion seeking permission to introduce evidence pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984). The evidence included three prior incidents in which Ferguson acted violently without provocation.  According to the motion and attached arrest

reports, Ferguson was arrested for battery and unlawful use of a weapon in 1991 and domestic battery in 1995. Then, in May 2006, Ferguson was arrested for aggravated assault and battery of Phillip Israel when Israel alleged that Ferguson knocked on Israel's door, requested $40, and, when Israel refused, kicked the chained door open and attacked Israel with a metal pipe. None of the incidents resulted in convictions. The trial judge found all three incidents too remote and denied McFarthing's request for leave to present the evidence.

¶ 7        At the jury trial, McFarthing and prosecution witnesses did not dispute most of the events of January 23, 2016. Ferguson called McFarthing, his longtime friend, and asked McFarthing to help with his computer. McFarthing, who had drunk a considerable amount of vodka, came over to the apartment of Ferguson and Ferguson's fiancé, Frances Yuska. Ferguson asked McFarthing to lend him $20. McFarthing agreed but needed to go out to get the cash. Ferguson drove McFarthing to get the cash and then Ferguson exchanged the cash for crack, which Ferguson used before driving back to the apartment. On the way into the building, Ferguson demanded more cash. McFarthing refused. They fought in the elevator. Both Yuska and another resident heard yelling from the elevator. A resident called police, and when the police arrived Ferguson was found unconscious in the elevator, with McFarthing crouched over him.

¶ 8        Officer John Ventrella testified that he saw McFarthing striking Ferguson and rummaging through Ferguson's pockets as Ferguson lay unresponsive on the elevator floor. McFarthing complied with Ventrella's instructions. Ferguson still had his watch and his cellphone, and police found none of Ferguson's property on McFarthing.

¶ 9    Yuska testified that after she heard the yelling from the elevator, McFarthing, alone, came into the apartment with blood on his hands.  He did not answer Yuska's questions about Ferguson.  McFarthing then returned to the elevator.

¶ 10    Dr. Ashray Ohri, who examined McFarthing around 2 a.m. on January 24, 2016, testified that McFarthing then had a blood alcohol level of .204.  Dr. Ohri found no significant injuries.

¶ 11    McFarthing testified that after Ferguson took the crack on January 23, he aggressively demanded more cash.  They exchanged heated words outside the apartment building.  When they entered the elevator, Ferguson rammed McFarthing's head against the elevator wall, then pushed his arm into McFarthing's throat, punched McFarthing, and kicked McFarthing in the groin.  McFarthing fell to the floor.  Ferguson pulled down his pants and told McFarthing to suck his penis.  McFarthing grabbed Ferguson's leg and pulled Ferguson off his feet.  McFarthing then kicked Ferguson repeatedly.  When McFarthing stopped kicking, Ferguson grabbed his throat and started strangling him.  McFarthing head butted Ferguson and kicked him when he fell again.  McFarthing did not remember anything from the time a resident looked into the elevator until he found himself in the hospital.  He did not remember going to Yuska's apartment, but he was "not going to say it didn't happen."

¶ 12    Prosecutors argued that McFarthing beat Ferguson so that he could sexually assault Ferguson and rob him, and only the arrival of police ended the other offenses.  The defense argued that McFarthing acted in self-defense and under the serious provocation of Ferguson's sexual assault and violent unprovoked attack.  The jury found McFarthing not guilty of attempted robbery, not guilty of sexual assault, and not guilty of first degree murder, but guilty of second degree murder.

¶ 13    The trial court denied McFarthing's motion for a new trial. At the sentencing hearing, the court noted in aggravation the exceptional extent of the injuries McFarthing inflicted on Ferguson. The court also found McFarthing's prior misconduct aggravating, including his conviction for domestic violence and the fact that he was on probation for endangering his children when he beat Ferguson. In mitigation, the court noted that McFarthing had no prior felony convictions, and was working towards a G.E.D. The court sentenced McFarthing to 16 years in prison and denied his motion to reconsider the sentence. McFarthing now appeals.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, McFarthing argues (1) the trial court erred by denying his pretrial motion to admit *Lynch* evidence concerning Ferguson's violent character, and (2) the court imposed an excessive sentence.

¶ 16                            A. Prior Violent Acts

¶ 17    McFarthing admits that his attorney failed to preserve the evidentiary issue for review. He asks this court to address the issue as plain error or as proof of ineffective assistance of counsel. We may reverse a conviction for plain error (1) when the evidence is closely balanced and the error may have affected the outcome, or (2) when the error is so serious that it challenged the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178 (2005).

¶ 18    Our supreme court has found:

> "Plain-error review under the closely-balanced-evidence prong of plain error is
> similar to an analysis for ineffective assistance of counsel based on evidentiary
> error insofar as a defendant in either case must show he was prejudiced; that the
> evidence is so closely balanced that the alleged error alone would tip the scales

of justice against him, i.e., that the verdict may have resulted from the error and not the evidence properly adduced at trial (citation); or that there was a reasonable probability of a different result had the evidence in question been excluded." (internal quotation marks omitted) *People v. White*, 2011 IL 109689, ¶ 133.

¶ 19 The jury apparently found McFarthing credible, as it acquitted him on charges of first degree murder, aggravated criminal sexual assault, and attempted robbery. The extensive injuries Ferguson suffered, and McFarthing's lack of any significant injuries, overwhelmingly showed that McFarthing continued kicking and hitting Ferguson after incapacitating him. When one responds with the level of excessive force that one is no longer acting in self-defense but in retaliation, the use of excessive force renders one the protagonist; a non-aggressor should not become the aggressor. *People v. Nunn*, 184 Ill. App. 3d 253, 269 (1989). Once the aggressor has been disabled or disarmed, the use of deadly force generally cannot be justified as self-defense. *People v. Stokes*, 185 Ill. App. 3d 643, 657 (1989). We see no reasonable likelihood that evidence of an attack ten years prior to the incident here would have convinced the jury that Ferguson's acts fully justified McFarthing's response.

¶ 20 We also find that in light of the evidence adduced at trial about Ferguson's attack on McFarthing – evidence the jury apparently accepted – the trial court's decision to disallow evidence of the 2006 attack on Israel and Ferguson's alleged incidents of domestic violence did not challenge the integrity of the judicial process. See *People v. Loggins*, 257 Ill. App. 3d 475, 482-84 (1993). We find that the exclusion of evidence of the victim's prior violent acts,

in the context of this case, does not amount to plain error, and it does not show ineffective assistance of counsel.

¶ 21                                   B. Sentencing

¶ 22        The trial court imposed on McFarthing a sentence of 16 years in prison, near the maximum non-extended term for the offense of second degree murder.  730 ILCS 5/5-4.5-30(a) (West 2016).  McFarthing contends that the court did not sufficiently consider his lack of prior felony convictions, his sincere remorse expressed in allocution, his work record and education, and his acknowledgment of his need for treatment for alcoholism.

¶ 23        Where there is no evidence that the trial court abused its discretion, we defer to the trial court's sentencing decisions because the trial court "can make a reasoned judgment based upon firsthand consideration of such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age (citations); whereas the appellate court has to rely entirely on the record." (internal quotation marks omitted) *People v. Streit*, 142 Ill. 2d 13, 19 (1991).  The trial court here weighed all the factors in aggravation and mitigation.  We might have emphasized the potential for rehabilitation and put less emphasis on McFarthing's status as on probation.  However, "[a] reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently." *Streit*, 142 Ill. 2d at 19.  We find that the sentence here is not greatly at variance with the purpose and spirit of the law. *People v. Steffens*, 131 Ill. App. 3d 141, 151 (1985).

¶ 24        As the seriousness of the offense is the most important factor to consider, the trial court is not required to give McFarthing's rehabilitative potential more weight. The trial court considered factors in aggravation and mitigation, and the court noted that McFarthing was on

probation at the time of the offense. The trial court further noted that McFarthing did not have any prior felonies, pursued his G.E.D, and expressed fear of Ferguson. We find that the trial court did not abuse its discretion by imposing a sentence of 16 years on McFarthing.

¶ 25                                III. CONCLUSION

¶ 26        The trial court did not commit plain error in excluding evidence of the victim's prior violent acts.  Based on the facts of this case, the trial court did not abuse its discretion by imposing a sentence near the maximum of the non-extended range for second degree murder. Accordingly, we affirm the trial court's judgment.

¶ 27        Affirmed.